ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2006 APR 18 PM 2: 26

CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| FRED SCHNEIDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 305-158 |
| | ) | |
| JAMES DONALD et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendants have submitted motions to dismiss plaintiff's complaint, which was filed under Title 42, United States Code, Section 1983, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), codified at Title 42, United States Code, Section 2000cc. Docs. 14, 17. Plaintiff, proceeding pro se, responded to the motions on March 30, 2006, and April 4, 2006. Docs. 18, 19. Defendants replied on April 7, 2006. For the reasons stated below, the Court recommends that the motions to dismiss be **GRANTED IN PART AND DENIED IN PART**.

### I. BACKGROUND

Plaintiff, an inmate at Wheeler Correctional Facility ("Wheeler"),[1] alleges that

---

[1] Wheeler is a private prison facility run by Corrections Corporation of America ("CCA") in contract with the State of Georgia Department of Corrections.

defendants have deprived him of his right to free practice of religion. His specific allegations include the prison's refusal to provide a kosher diet or a meal at the end of each twenty-four hour period of fasting required during the Jewish celebration of Passover. He also alleges that the prison would not allow him to receive a "Passover Package" of food to be consumed during Passover or free faith-based literature and books from Jewish support organizations. Finally, he complains that he is not allowed to take part in Jewish faith-based programs at the prison.

Plaintiff alleges violations of the Establishment Clause of the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the RLUIPA. Defendants move to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure on grounds that plaintiff failed to exhaust his administrative remedies, that plaintiff failed to plead a cognizable injury, that plaintiff seeks relief from persons who cannot be sued under the RLUIPA, that plaintiff's complaint facially fails to state a ground on which relief can be granted, and that plaintiff fails to state an equal-protection violation. Defendant Donald also claims that qualified immunity protects him from lawsuit.

## II. RULE 12(b)(6) STANDARD

A motion under Rule 12(b)(6) challenges the legal sufficiency of the complaint. "In essence, a movant says, 'Even if everything you allege is true, the law affords you no relief.'" Johnson v. Fleet Finance, Inc., 785 F. Supp. 1003, 1005 (S.D. Ga. 1992). In evaluating a motion to dismiss under Rule 12(b)(6), all of the non-moving party's allegations must be presumed true and all reasonable inferences must be construed in the light most favorable

to the non-moving party. Miree v. DeKalb County, Ga., 433 U.S. 25, 27 n.2 (1977); Powell v. Lennon, 914 F.2d 1459, 1463 (11th Cir. 1990).

Furthermore, a claim presented by a pro se litigant should not be dismissed unless it appears that no relief can be granted by any set of facts that can be proved in support of the complaint's allegations. Hughes v. Rowe, 449 U.S. 5, 10 (1980) (*per curiam*); Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*); see also Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (complaint should not be dismissed for failure to state claim unless it appears face of complaint that plaintiff can prove no set of facts consistent with allegation that would entitle him to relief). Granting a motion to dismiss is disfavored and rare. Brooks v. Blue Cross and Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997). Finally, while factual allegations in the complaint must be taken as true when considering a motion to dismiss, there is no requirement that the Court must accept as true the plaintiff's conclusions of law. See Solis-Ramirez v. United States Dep't of Justice, 758 F.2d 1426, 1429 (11th Cir. 1985).

## III. EXHAUSTION

Defendants first contend that plaintiff's complaint should be dismissed because he has failed to exhaust his administrative remedies. Title 42, United States Code, Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." Section 1997e(c)(1) further provides that the Court shall dismiss any action

brought under Section 1983 concerning prison conditions if the action fails to state a claim upon which relief can be granted. In the Eleventh Circuit, "[a] claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted." Rivera v. Allin, 144 F.3d 719, 731 (11th Cir. 1998); see also Moore v. Smith, 18 F. Supp.2d 1360, 1362 (N.D. Ga. 1998) (finding that a prisoner lawsuit in which the denial of a grievance was not appealed must be dismissed under § 1997e).

Furthermore, the Eleventh Circuit Court of Appeals has held that as a result of the Prison Litigation Reform Act, ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), Section 1997e requires that all claims be submitted to the prison grievance procedure "even if the relief offered by that program does not appear to be 'plain, speedy, and effective,' before filing those claims in federal court. The judicially created futility and inadequacy doctrines do not survive the PLRA's mandatory exhaustion requirement." Alexander v. Hawk, 159 F.3d 1321, 1328 (11th Cir. 1998). The Court no longer has discretion to waive the exhaustion requirement. Id. at 1325. Indeed, the Supreme Court has clarified "that § 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002).

Under the Georgia Department of Corrections Standard Operating Procedure ("SOP") IIB05-0001 § VI(B), once an inmate has unsuccessfully attempted to resolve a complaint through discussion with prison staff, the administrative remedies procedure commences with the filing of an informal grievance. The SOP requires that an inmate be given a response to his informal grievance within ten (10) calendar days of its receipt by the inmate's counselor; the informal grievance procedure must be completed before the inmate will be

4

issued a formal grievance. SOP IIB05-0001 § VI(B)(12)-(13). If unsatisfied with the resolution of his informal grievance, an inmate must complete a formal grievance form and return it to his counselor within five (5) business days of his receipt of the written resolution of his informal grievance. Id. § VI(C)(2). Once the formal grievance is given to the counselor, the Warden has thirty (30) calendar days to respond. Id. § VI(C)(14). If the inmate is not satisfied with the Warden's response to the formal grievance, he has five (5) business days from the receipt of the response to file an appeal to the Office of the Commissioner; the Office of the Commissioner or his designee then has ninety (90) calendar days after receipt of the grievance appeal to respond. Id. § VI(D)(2),(5).

Plaintiff filed a formal grievance on July 14, 2005, which he attached to his complaint. In the grievance, plaintiff sought both a kosher diet and a Jewish faith-based program at the prison. Compl. Att. Prison officials denied the part of the grievance seeking a Jewish faith-based prison program and did not address plaintiff's request for a kosher diet. Id. When plaintiff appealed the grievance, the appeal was denied because plaintiff "failed to follow proper grievance procedures in that [he] filed more than one complaint." Id.

According to SOP IIB05-0001 § VI(c)(4), "[o]nly one issue may be addressed per Formal Grievance. Any grievance which attempts to address more than one issue or which addresses an issue not identified on the Informal Grievance will be rejected." Plaintiff's claims regarding a kosher diet and a Jewish faith-based program were not considered on appeal because he failed to file his grievance in accordance with prison policy. Plaintiff had the opportunity to exhaust those issues by including them in separate grievances, as prison policy requires him to do. He failed to do so, and he accordingly failed to exhaust his

5

administrative remedies with respect to those claims. Because a prisoner is required to satisfy all procedural requisites in exhausting his claims, Johnson v. Meadows, 418 F.3d 1152, 1158 (11th Cir. 2005), and because plaintiff failed to do so here, these claims should be dismissed from his complaint.

Plaintiff filed another formal grievance on March 28, 2005. There, he complained of not being able to receive various religious materials, including a "Passover Package" and Jewish literature. He also complained of being denied an alternative diet.[2] Compl. Att. Prison officials "granted" the grievance, stating that plaintiff "will be allowed to receive the Passover Package from Aleph Institute. However, [plaintiff] will not be provided alternative meals when he decides to fast; the GDC schedule will be adhered to for feeding." Id. According to plaintiff, when he attempted to appeal the denial of his request for alternative meals, he was told that his grievance could not be appealed because it had been "granted."

Plaintiff's plight is analogous to that of the plaintiff in Miller v. Tanner, 196 F.3d 1190 (11th Cir. 1999), where the plaintiff was told by a prison official that he could not appeal his grievance denial. Id. at 1195. The Eleventh Circuit found that the plaintiff "was not required, in order to exhaust his administrative remedies, to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded." Id.

Plaintiff in this case also was told that he could not appeal his grievance decision. The Miller court held that a plaintiff's appeal rights should be construed as exhausted where prison officials inform him that he is not allowed to proceed with an appeal. Thus, like the

---

[2] While it appears that this grievance could have been denied under SOP IIB05-0001 § VI(c)(4) for raising multiple issues, prison officials did not deny it on that ground, and defendants do not assert that the issues raised therein should be denied on that ground.

6

plaintiff in Miller, plaintiff here was not required to file an appeal after being told by prison officials that he had no right to do so. Accordingly, the claims raised in plaintiff's March 8, 2005, grievance are exhausted for purposes of this complaint. Plaintiff's other claims should be dismissed as unexhausted.

## IV. DE MINIMIS INJURY

Defendants contend that plaintiff's complaint should be dismissed because he does not allege a physical injury of a constitutional magnitude. Indeed, recovery for emotional anguish is not appropriate under Section 1983 or the RLUIPA. 42 U.S.C. 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."). The Eleventh Circuit has found that Section 1997e(e) is applicable even in claims alleging constraints on religious practice. Najiy-Ullah Aziyz v. Chatman, No. 02-16295 (11th Cir. July 17, 2003) (unpublished opinion) (citing Harris v. Garner, 190 F.3d 1279, 1287-88 (11th Cir. 1999)). Accordingly, plaintiff's failure to allege physical injury in his complaint precludes him from seeking damages in this case.

Plaintiff, however, does seek injunctive relief in his complaint. Relevant to the exhausted claims in his complaint, he urges the Court to direct defendants "to establish a certified kosher kitchen, which is operated by a licensed kosher dietician, or buy pre-prepared certified kosher meals and means to prepare said kosher meals in a certified kosher manner that meets all the religious requirements of Jewish kosher laws (kashruth)." Compl. at 17. Because Section 1997e(e) does not foreclose a prisoner from seeking injunctive relief where

no physical injury is alleged, his plea for injunctive relief should remain. His plea for damages, however, should be dismissed.

## V. INDIVIDUAL LIABILITY UNDER THE RLUIPA

Defendants next contend that individuals cannot be sued under the RLUIPA. Under Section 2000cc-2, "[a] person may assert a violation of [the RLUIPA] as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." Section 2000cc-5(4)(a) defines "government," for purposes of the RLUIPA, as, *inter alia*, "any branch, department, agency, instrumentality, or official [of a governmental entity]" or "any other person acting under color of State law."

Few courts have addressed the liability of individual defendants under the RLUIPA. While the court in Hale O Kaula Church v. Maui Planning Commission, 229 F. Supp. 2d 1056 (D. Haw. 2002), held that individual defendants could not be sued under the RLUIPA, it did not address language in Section 2000cc-5(4)(a) extending the definition of "government" to government officials and others acting under color of state law. Id. at 1067.

The court in Guru Nank Sikh Society of Yuba City v. County of Sutter, 326 F. Supp. 2d 1128 (E.D. Cal. 2003), reached a different conclusion after considering the definition of "government" in Section 2000cc-5(4)(a). It concluded that the language of the RLUIPA "leaves little room for ambiguity; an 'official' of a 'county' is clearly amenable to suit under the statute." Id. at 1136. Other courts have allowed lawsuits filed under the RLUIPA against individual defendants without considering whether individuals are amenable to lawsuit. E.g.,

Cutter v. Wilkinson, 544 U.S. 709 (2005); Williams v. Bitner, 359 F. Supp. 2d 370 (M.D. Pa. 2005).

Defendants contend that, notwithstanding the statutory definition of "government" in the RLUIPA, individual defendants should be shielded from liability under the RLUIPA inasmuch as the RLUIPA is spending clause legislation. See Benning v. Georgia, 391 F.3d 1299 (11th Cir. 2004) (affirming constitutionality of RLUIPA as appropriate spending clause legislation). Because individual defendants are not a party to the state's acceptance of federal funds in exchange for the implementation of federal legislation, individuals, according to defendants, should not be subject to lawsuit under such legislation. In support of their position, defendants cite other spending clause legislation, the Americans with Disabilities Act and the Age Discrimination in Employment Act, which do not provide relief against defendants sued in their individual capacities.[3]

Even the spending clause legislation cited by defendants, however, allow a government official to be sued in his or her official capacity. See, e.g., Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991) (recognizing that "suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent"). Inasmuch as the only claims that should remain in this case are for injunctive relief, plaintiff is proceeding in this case against defendants in their official capacities as prison employees. Accordingly, because the RLUIPA provides a cause of action against individual defendants and because the status of the RLUIPA as spending clause legislation would not, in any case, bar relief from defendants acting in their official capacities, plaintiff's

---

[3]Defendants, however, do not cite a case where individual liability is denied *because* the statute at issue was spending clause legislation.

RLUIPA claims should not be dismissed.[4]

## VI. FAILURE TO STATE A CLAIM

Defendants next contend that plaintiff has not sufficiently pleaded a violation of his First Amendment rights. The Eleventh Circuit in Saleem v. Evans, 866 F.2d 1313 (11th Cir. 1989), mandated that, when a prisoner claims that his right to free religious practice has been violated, the court should conduct an inquiry into whether the alleged deprivations of religious rights in prison facilities are justified by compelling interests in prison administration. Id. at 1316. Such an inquiry is fact-intensive, and thus not appropriate without proper factual development of a case. Id.

Here, the Court has found that plaintiff exhausted the claims raised in his March 28, 2005, formal grievance, which include the failure to provide an alternative religious diet and the failure to allow plaintiff to receive such religious materials as a "Passover Package" and Jewish literature.[5] The Court cannot dismiss these claims on their merits without a factual inquiry into the prison interests justifying the alleged deprivation of plaintiff's right to free practice of his religion. Accordingly, the Court may not dismiss plaintiff's complaint on this

---

[4]Plaintiff also may proceed with his claims against Defendants Ferguson, Kemp, Day, and Ashley because they are employees of the CCA, a private entity. As the Court points out in Section VIII, infra, of this Report and Recommendation, those defendants, though they act under color of state law and thus are subject to liability under the RLUIPA and other legislation, do not enjoy the same immunities for acting in their official capacities as defendants who are state employees.

[5]While the response to plaintiff's grievance indicates that he was allowed to receive the Passover Package, it is unclear from plaintiff's pleadings whether he in fact did receive it.

10

ground.[6]

## VII. EQUAL PROTECTION

Defendants next argue that plaintiff's equal protection claims should be dismissed because plaintiff has not alleged that any other similarly situated group of individuals were allowed privileges that were denied him on account of his religious preferences. To establish an equal protection claim, "a prisoner must demonstrate that (1) 'he is similarly situated with other prisoners who received' more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race." Jones v. Ray, 279 F.3d 944, 947 (11th Cir. 2001) (citing Damiano v. Florida Parole & Prob. Comm'n, 785 F.2d 929, 932-33 (11th Cir. 1986).

Liberally construing plaintiff's complaint, he has alleged that other religious groups, such as Christians and Muslims, are allowed privileges associated with the practice of their religions that are denied to him as a person of Jewish faith. The Court accordingly finds that plaintiff has stated cognizable grounds for relief under the Equal Protection Clause of the Fourteenth Amendment.

## VIII. QUALIFIED IMMUNITY

Finally, Defendant Donald, the Commissioner of the Georgia Department of Corrections, alleges that he is protected in this case by the doctrine of qualified immunity.

---

[6]If the Court were disposed to dismissing plaintiff's claim on this ground, it would have recommended doing so in its Title 28, United State Code, Section 1915A-mandated screening.

State officials are immune from lawsuit for the good-faith performance of discretionary acts within the scope of their authority, unless their conduct violates a "clearly established statutory or constitutional right of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

The Court finds that it need not reach the issue of qualified immunity with respect to Defendant Donald. Plaintiff has not alleged any discretionary act on the part of Defendant Donald that would have resulted in a deprivation of plaintiff's religious rights, nor has he alleged that Defendant Donald had actual or constructive knowledge of any deprivation of his rights. The claims that the Court has construed as exhausted were never appealed, meaning that, because plaintiff is not in a state-operated prison, no Georgia Department of Corrections official has administratively reviewed his claims. Plaintiff, in fact, indicated in his March 28, 2005, grievance that the state-run prisons in which he was previously incarcerated–Rivers State Prison and Telfair State Prison–allowed him the same religious rights that he claims he has been denied at Wheeler. Accordingly, plaintiff has failed to state a claim on which relief may be obtained with respect to Defendant Donald, and Defendant Donald accordingly should be dismissed from this action.

The Court notes, parenthetically, that the other defendants in this action, all of whom are employed by CCA, may not claim qualified immunity by virtue of not being state employees. The Supreme Court has held that prison guards employed by private entities may not assert qualified immunity as a defense. Richardson v. McKnight, 521 U.S. 399, 412 (1997). As part of its rationale for denying qualified immunity, the Court noted that prison administration has never been an exclusively "public" function, and, thus, officials at private

prisons are not performing functions exclusively reserved for the state. Id. at 405; accord Hinson v. Edmond, 192 F.3d 1342, 1348 (11th Cir. 1999) (applying Richardson in context of private prison doctor and finding no qualified immunity).

While the Richardson Court did not address whether privately employed prison guards should be subject to lawsuit under Section 1983, other courts have held that employees of privately run prison facilities are subject to Section 1983 liability. Rosborough v. Management & Training Corp., 350 F.3d 459, 461 (5th Cir. 2003); Street v. Corrections Corp. of Am., 102 F.3d 810, 814 (6th Cir. 1996); Ancata v. Prison Health Servs., 769 F.2d 700, 703 (11th Cir. 1985). The rationale used by these courts for finding private individuals subject to Section 1983 liability is that the privately run prisons perform "a function which is traditionally the exclusive prerogative of the state." Ancata, 769 F.2d at 703; Rosborough, 350 F.3d at 460.

A curious result follows. Employees of privately run prison facilities may be sued under Section 1983 because those prisons perform a function that courts deem the "exclusive prerogative of the state." Those same employees, however, may not claim qualified immunity because, according to the Supreme Court in Richardson, prison administration has never been an exclusively state function.

The liability of employees of private prison facilities under Section 1983 becomes even more muddled when one considers the parallel universe of liability created by Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), which provides an avenue of recovery for constitutional violations caused by federal employees. Two courts have recently held that employees of privately run federal prison facilities are not

subject to liability under Bivens. Holly v. Scott, 434 F.3d 287, 294 (4th Cir. 2006); Peoples v. CCA Detention Centers, 422 F.3d 1090, 1108 (10th Cir. 2005). In reaching its decision in Holly, the Fourth Circuit followed the Supreme Court's analysis in Richardson and found that prison administrators did not perform a traditionally "public function." Holly, 434 F.3d at 294. The Holly court also noted that

> [s]ince qualified immunity under Bivens and § 1983 are identical, were we to find defendants potentially liable, the holding of Richardson would preclude us from granting them a qualified immunity defense. This would put prisoners in private facilities in a more favorable position than their counterparts in federally operated prisons: they would be eligible to recover damages even where the unconstitutionality of the prison officials' conduct had not been clearly established by prior judicial decisions. In the absence of statutory authority, we are reluctant to create an anomaly whereby private defendants face greater constitutional liability than public officials.

Id.

Such an anomaly already pervades the Section 1983 liability of state private prison employees. Such employees are subject to liability in federal court for constitutional violations merely by virtue of their employer contracting with state, rather than federal, prison authorities,[7] and they cannot raise qualified immunity merely by virtue of working at a private, rather than a state-run, prison facility. For prisoners, whereas their counterparts in federal private prison facilities may have no remedy at all in federal court for constitutional violations, and whereas their counterparts in state-run prison facilities must overcome the qualified immunity defense, prisoners in state private prison facilities may file under Section 1983 and not be concerned about the qualified immunity hurdle. The Court

---

[7] One might wonder whether employees of a prison facility that operated under contracts with both federal and state authorities, and housed both federal and state prisoners, would be subject to federal lawsuit.

14

finds no reason for a prisoner in a state private facility to be in a more favorable position than his counterparts in state-run facilities or in federal facilities.

The Court suggests that, to remedy this anomaly, the time has come for courts to revisit the liability of employees at state private prison facilities in light of the Supreme Court's analysis in Richardson. Defendants employed by CCA in this case, however, have not raised the issue of qualified immunity, and the Court accordingly will leave resolution of the issue for another day.

## IX. CONCLUSION

For the reasons state above, the Court recommends that defendants' motions for summary judgment be **GRANTED IN PART AND DENIED IN PART**. Defendant Donald should be **DISMISSED** from this action. Plaintiff's plea for damages also should be **DISMISSED**. Plaintiff's claims other than those raised in his March 28, 2005, grievance, which the Court construes as exhausted, should be **DISMISSED**. This action should continue with regard to the claims raised in the March 28, 2005, grievance against the remaining defendants.

SO REPORTED AND RECOMMENDED this 18th day of April, 2006, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE