# ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2007 MAR 27 A 11: 23

CLERK _L. Flanders_
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

FRED SCHNEIDER,                    )
                                   )
    Plaintiff,               )
                                   )
v.                                 )          CV 305-158
                                   )
JOHN D. FERGUSON, et al.,          )
                                   )
    Defendants.              )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Plaintiff Fred Schneider, an inmate at Macon State Prison in Oglethorpe, Georgia, is proceeding *pro se* and *in forma pauperis* in the above-captioned case. Now before the Court is Defendants' motion for summary judgment. (Doc. no. 66). Plaintiff opposes the motion. (Doc. no. 72). For the reasons that follow, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED**, that judgment be **ENTERED** in favor of Defendants, and that this civil action be **CLOSED**.

## I.   BACKGROUND

### A.   Procedural History

In his original complaint, Plaintiff argued that while he was incarcerated at Wheeler Correctional Facility (hereinafter, "Wheeler"), he met with Defendant Ron Day, the Chaplin at Wheeler, to request permission to receive a Passover Package of kosher food to be

consumed during the eight days of Passover. (Doc. no. 1, p. 11). Plaintiff also requested a sack meal ("pack-out")[1] at the end of his 24-hour religious mandated fasts, free Jewish books and literature from Jewish support organizations, and a kosher diet. (Id.). Plaintiff stated that Defendant Day told him that "they do not do Jew[s] here at Wheeler," and that Wheeler is a private prison and only provides Christian and Muslim religious services. (Id.). A few months later, Plaintiff requested permission from Defendant Chris Ashley, the unit manager of Wheeler's faith-based program, to enter the prison's faith-based program as a "Torah Observant Jew" and to study the Jewish religion, as opposed to the Christian-based "School of Christ" curriculum that the program offered. (Id. at 12). Plaintiff asserted that Defendant Ashley told him that he could enter the faith-based program, but Defendant Ashley denied his request to only study the Jewish religion. (Id.). Plaintiff claimed that this violated his right to free practice of religion under the First Amendment, as well as his rights under the Due Process and Equal Protection Clauses, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), codified at 42 U.S.C. § 2000cc, and the "State Created Protected Interests within the Department of Corrections Code for Religious Practices." (Id. at 13-16).

The Court then screened Plaintiff's complaint, pursuant to 28 U.S.C. §§ 1915(e) and 1915A, and ordered that the complaint be served on Defendants. (Doc. no. 7). Thereafter, Defendants filed motions to dismiss. (Doc. nos. 14, 17). After considering Defendants' motions and Plaintiff's response thereto, the Honorable Dudley H. Bowen, Jr., United States District Judge, dismissed Plaintiff's request for damages because Plaintiff

---

[1] Plaintiff states that these "pack-outs" include a sandwich, fruit, and juice. (Doc. no. 67, Ex. A, p. 20).

2

failed to demonstrate physical injury to allow him to recover damages for mental/emotional injury under 42 U.S.C. § 1997e.[2] Judge Bowen also dismissed Plaintiff's claim concerning an alleged deprivation of Plaintiff's right to free practice of religion as it related to (1) receiving a kosher diet and (2) participating in the prison's Jewish faith-based program, as these two arguments were unexhausted. (Doc. no. 21, p. 15). Judge Bowen permitted Plaintiff to proceed on his claims for (1) an alleged deprivation of his right to free practice of religion as it related to (A) receiving a "Passover Package," (B) receiving free Jewish literature, and (C) the denial of an alternative meal after a religious mandated fast, and (2) a violation of Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment and RLUIPA.

Following Judge Bowen's Order on Defendants' motions to dismiss, this Court permitted Plaintiff to amend his complaint. (Doc. no. 41). In accordance with the Court's Order, Plaintiff submitted his amended complaint, reasserting the above facts and claims for relief, but also adding facts suggesting that he suffered from atrial fibrillations and angina attacks as a result of the "anti-Semitism and denial of religious rights at [Wheeler]." (Doc. no. 49, p. 8). Plaintiff also contended that Defendants improperly increased his security level from "medium" to "close" and transferred him to a "close security" disciplinary prison without officially charging him with any infraction.[3] (Id. at 9). Defendants answered,

---

[2] Additionally, Judge Bowen dismissed Defendant James Donald for failure to state a claim upon which relief can be granted.

[3] Other evidence in the record indicates that Plaintiff's transfer occurred because of an incident involving Plaintiff and another inmate. Plaintiff apparently approached another inmate in an inappropriate manner and sexually assaulted him. (Doc. no. 52, Kemp Aff., Rosier Aff.). The Georgia Department of Corrections ("GDOC") investigated the sexual

3

denying all liability. (Doc. no. 49).

Defendants then filed a summary judgment motion, which is now before the Court. (Doc. no. 66). In their motion, Defendants argue that Plaintiff is not entitled to relief because he has improperly sued Defendants in their capacities as supervisors. (Id. at 7-8). Defendants further contend that Plaintiff fails to meet the physical injury threshold to recover for mental or emotional damages under § 1997e because his heart condition is not caused by any alleged religious discrimination; thus, Plaintiff is not entitled to damages. (Id. at 8-11). In addition, Defendants assert that they are not liable under RLUIPA because Wheeler does not receive federal funding, and they have not placed a substantial burden on Plaintiff's exercise of religion. (Id. at 11-14). Regarding Plaintiff's First Amendment claims, Defendants maintain that the GDOC is responsible for creating the policies of which Plaintiff complains, and Plaintiff's requests were granted to the extent that those requests did not interfere with prison security. (Id. at 15-16). Defendants also assert that Plaintiff's Equal Protection claim is likewise meritless because he has failed to demonstrate that Defendants acted with any discriminatory intent. (Id. at 17). Finally, Defendants argue that (1) they did not retaliate against Plaintiff by raising his security level and transferring him to another institution, as that responsibility rests solely with the GDOC, and (2) Plaintiff's claims for injunctive relief are moot, as Plaintiff is no longer incarcerated at Wheeler. (Id. at 18).

In response to Defendants' summary judgment motion, Plaintiff contends that Defendants mischaracterized the faith-based program as a "character principles program,"

---

assault charges and, on the recommendation of a GDOC contract monitor, raised Plaintiff's security classification level and transferred Plaintiff from Wheeler to another prison in the interest of the safety of the other inmate. (Id.).

and he did not assert this issue in his amended complaint, but instead cited it as "an example of continued prejudicial treatment." (Doc. no. 72, pp. 2-3). Plaintiff also states that he was not "medically unassigned," as Defendants maintain, but noted that in his deposition he stated that he was no longer working because of his heart condition. (Id. at 3-4). Additionally, Plaintiff argues that he never stated that he was denied rabbinical visits, only that his visits were treated with less dignity than clerical visits of other faiths. (Id. at 4-5). Further, Plaintiff claims that based on the Cornell Encyclopedia of Health, the Good Health Fact Book, the American Medical Association Encyclopedia of Medicine, and the Oxford Medical Companion, his atrial fibrillations were caused by the stress of the religious discrimination he suffered, and not any other factors. (Id. at 6-7). Moreover, Plaintiff states that Wheeler does, in fact, receive federal funding from Corrections Corporation of America, Inc. ("CCA"), the institution that owns and operates Wheeler. (Id. at 8). He further contends that Defendants never offered him the option of purchasing kosher foods and that none of his requests posed security issues. (Id. at 8, 11). As to his transfer, Plaintiff maintains that he did not assault another inmate, and Defendants fabricated the accusation "to get rid of [him]." (Id. at 11). As a result, Plaintiff asserts that Defendants are not entitled to summary judgment. (Id. at 15).

**B.      Facts**

### 1.      Physical Injury

With their summary judgment motion, Defendants provided the following relevant information related to Plaintiff's claim of physical injury. In his deposition, Plaintiff testified that after he had been working at his prison job for three months, he started having heart

attacks, "one or two a week" that are "minor," and as a result of these heart problems, he is no longer working. (Doc. no. 67, Ex. A, pp. 33-34). Plaintiff stated that he was sent to an outside cardiologist for his heart problems, and that doctor determined that Plaintiff's heart problems were electrical, not a result of a clog. (Id. at 34). The cardiologist also concluded that Plaintiff has had heart attacks in the past that have caused scar tissue to build up in his heart. (Id.).

Defendants also provided the affidavit of Dr. William Sightler, the prison physician at Wheeler who cared for Plaintiff while Plaintiff was incarcerated there. (Id. at Ex. B). Dr. Sightler stated in his affidavit that Plaintiff has a heart condition, atrial fibrillation, which is a disorder of the heart's electrical activity that results in an irregular heartbeat. (Id. ¶ 4). According to Dr. Sightler, atrial fibrillation has various causes including high blood pressure, coronary artery disease, heart attacks, heart failure, valve disease or disorder, cardiomyopathy, myocarditis, or rheumatic fever, but it is not a condition that is caused by stress. (Id.). Symptoms of atrial fibrillation include heart palpitations, angina, tiredness, rapid heart rate, and reduced cardiac output. (Id. ¶ 5). Dr. Sightler stated that although he is familiar with atrial fibrillation, he referred Plaintiff to a cardiologist for a complete "work-up." (Id. ¶ 6). Based on the cardiologist's recommendations, Dr. Sightler placed Plaintiff on medications for heart rate control and anti-coagulation, and as an extra precaution, he directed that Plaintiff's medical profile be changed to "medically unassigned," meaning that Plaintiff was not to be assigned a job at the prison. (Id.).

In response, Plaintiff submitted his affidavit, wherein he stated that contrary to what Dr. Sightler stated, he has never had "medically unassigned status." (Doc. no. 73, Ex. A,

6

pp. 1, 3-4). Plaintiff asserted that he worked for one month in the inmate store before the prison's physician's assistant "pulled" him from this assignment due to a pre-existing back problem. (Id. at 1-2). Then Plaintiff worked as an education aide, but he was reassigned after three months because he was too tired to work. (Id. at 2). Thereafter, Plaintiff was assigned "dorm orderly" status until he was placed in the faith-based dorm. (Id.). Plaintiff also averred that his cardiologist told him that stress is a major factor in any and all health issues. (Id.). Plaintiff asserted that he has never been diagnosed with any of the common causes of atrial fibrillation, and he was only placed on blood pressure medication as a precautionary measure for "borderline readings." (Id.).

### 2. First Amendment Claim

As for Plaintiff's First Amendment claim as it relates to receiving a Passover Package, Plaintiff testified in his deposition that as a part of the orthodox Jewish religion, he is required to eat kosher food.[4] (Doc. no. 67, Ex. A, p. 14). Plaintiff stated that during Passover, the regulations for kosher food are more stringent, and, as a result, if he does not get a kosher package sent into him, he does not eat. (Id. at 15). However, in his deposition, Plaintiff twice admitted that he got the Passover Package that he requested while he was at Wheeler. (Id. at 22, 32).

---

[4] There are several rules regarding whether food is kosher, including, but not limited to, not mixing meat and dairy, preparing the food in a particular manner, and keeping utensils and containers separated. (Doc. no. 67, Ex. A, pp. 14-15).

Further, in his affidavit, Defendant Ralph Kemp, the Warden at Wheeler, stated that Plaintiff was the only inmate at Wheeler who actively practiced the Jewish religion.[5] (Id. at Ex. C, ¶ 3). Defendant Kemp admitted that he is not as familiar with Judaism as with some of the other religions. (Id.). Thus, when Plaintiff requested that Wheeler allow him to receive a Passover Package of kosher food from Jewish support organizations during Passover, Defendant Kemp had to look into the nature of this request. (Id. ¶ 8). After researching Plaintiff's request for a Passover Package, Defendant Kemp told the prison staff to allow Plaintiff to have his Passover Package, which Plaintiff later received. (Id.).

In addition to these affidavits, Defendants attached Standard Operating Procedure ("SOP") IIB06-0001 - Inmate Personal Property Standards - governing, *inter alia*, an inmate's receipt of packages. (Id. at Ex. E § (VI)(C)). Specifically, the SOP dictates that any package that is sent to an inmate must not weigh more than ten pounds, and the contents of the package must be on the prison's "Package Receipt Items List." (Id. § (VI)(C)(1)). Before an inmate can receive a package, he must obtain a "Request/Authorization to Receive Package" form, have it approved by a prison staff member, and have the form placed in his file. (Id. § (VI)(C)(3)). The package must be sent by a person authorized on the request form; all packages are opened when they arrive at the prison; and any contraband in the packages is removed. (Id. § (VI)(C)(4), (5)). The SOP also states that "wardens at individual institutions have the discretion of . . . excluding specific items, depending on the security, sanitation, and fire safety requirements at the institution." (Id. § (VI)(C)(11)).

---

[5] Based on the information in the documents that Plaintiff submitted to the Court, there appears to be about 1,500 total inmates at Wheeler. (Doc. no. 73, Ex. C).

Moreover, concerning Plaintiff's First Amendment claim as it relates to receiving a "pack-out," in his 2006 deposition, Plaintiff explained that the Jewish religion requires five 24-hour fasts per year. (Id. at Ex. A, p. 18). Plaintiff stated that after these 24-hour fasts, the other prisons have always given him a "pack-out." (Id. at 20). Plaintiff stated that Mr. Fred Brown, a GDOC employee who monitors Wheeler and other private prison facilities, informed Plaintiff "last year" (i.e., 2005) that Plaintiff could receive a "pack-out" at the end of his religious mandated fasts. (Id.). Plaintiff stated that he put in his request for a "pack-out" two-and-a-half weeks before the first religious fast of the year, to which Defendant Day stated, "I wish you'd given me a month's notice." (Id.).

Additionally, as with Plaintiff's request for a Passover Package, Defendant Kemp averred in his affidavit that he had to look into the nature of Plaintiff's request for a "pack-out." (Id. at Ex. C, ¶ 6). After doing so, Defendant Kemp determined that Plaintiff was allowed to have a "pack-out" as long as Plaintiff provided the appropriate request by the 45-day deadline set forth by the GDOC's SOP IVL01-0027 for submitting special requests related to holidays/fasts/feasts. (Id. ¶ 6).

As to Plaintiff's claim that he was unconstitutionally denied free religious materials, Plaintiff stated in his deposition that he has had to make a monetary donation in order to get any of the religious materials he requests, and he wants to instead receive these materials for free. (Id. at Ex. A, pp. 31-32). Specifically, Plaintiff claimed that after he made a personal monetary donation to the Lubevitch organization, they sent him a religious book, and after he finished that book and sent it back, they sent him another book, but Plaintiff asserted that the receipt of these books was based solely on his monetary donation. (Id.) Plaintiff testified

9

that he does not believe that he should have to pay to get his religious materials shipped to him. (Id.).

Defendant Kemp also averred that he allowed Plaintiff to receive the religious literature that he wanted even though the GDOC's policy did not technically allow Plaintiff to receive these materials. (Id. at Ex. C, ¶ 7). Specifically, SOP IIB06-0001 does not allow inmates to receive religious materials without limitation. The SOP states that any incoming publications must come from an approved publisher/dealer and inmates cannot have more than eight books in their personal possession. (Id.). Defendant Kemp stated that because Plaintiff was the only inmate actively practicing the Jewish faith, he allowed Plaintiff to receive his religious materials even though the materials were not sent from an approved vendor and were thus not in accordance with the SOP. (Id.).

In response, Plaintiff states in his affidavit that Defendant Kemp, in fact, denied his request for a "pack-out" after his 24-hour religious fasts, and claims that he never received a "pack-out" while he was incarcerated at Wheeler. (Doc. no. 73, Ex. A, p. 3). Plaintiff further admits that although his formal grievance concerning a Passover Package was approved and that he received this package, Defendants always commented that they did not have to let him have it and that it was given to him out of the "goodness of their hearts." (Id. at 3, 4). Plaintiff also claims that when Defendant Day gave him his Passover Package, Defendant Day stated, "I don't think you should get this, but our lawyers tell us we have to give it to you." (Id. at 4). Plaintiff also provided a memorandum, dated June 1, 2006, from Robert Rosier, the Assistant Warden at Wheeler, informing Plaintiff that he could receive

a "pack-out," but he had to notify Defendant Day of his request at least 30 days prior to the religious holiday. (Id. at Ex. R).

### 3. Working

As for Plaintiff's contention that he was unconstitutionally forced to work on a day that the Jewish religion prohibited him from working, Plaintiff testified, in his deposition, that, when he was working, there were no occasions where he was required to work on a day that the Jewish religion prohibited him from working. (Doc. no. 67, Ex. A, p. 33). Moreover, Defendant Kemp asserted in his affidavit that he was unaware of any SOP relieving inmates from the requirement of performing their prison jobs during religious holidays, but because Plaintiff was not working due to his medical condition, this was not an issue. (Id. at Ex. C, ¶ 8). Defendant Kemp further stated that Plaintiff never requested a work wavier from him, and he was not aware of any occasions where Plaintiff was forced to work on a religious holiday that forbids working. (Id.).

### 4. Equal Protection Claim

Regarding Plaintiff's Equal Protection Claim concerning rabbinical visits, Plaintiff testified in his deposition that at every other prison he has been at, he has received a week's notice of any rabbinical visits; however, he did not receive any notice when his rabbi came to visit him at Wheeler. (Id. at Ex. A, pp. 35-36). Plaintiff stated that he was woken up on a Sunday afternoon and was told to go to medical. (Id. at 36). He was then taken to a "hidden alcove" where his rabbi was waiting for him, which was the same room in which defense counsel took Plaintiff's deposition. (Id.). Plaintiff claimed that when he met with his spiritual leader, he had not shaved or brushed his teeth, he was in the wrinkled uniform

that he had slept in, and he was handcuffed. (Id.). He stated that this would never have happened to the Christian inmates at Wheeler, as they would have been given fair notice of a spiritual visitation. (Id. at 36-37). Despite Plaintiff's contention, Defendant Kemp averred that he was not aware that Plaintiff was ever denied any rabbinical visits and that for security purposes, inmates are never told in advance the date and time that any outside visitors are coming to the facility. (Id. at Ex. C, ¶ 8).[6]

Having clarified the factual background of the case, the Court turns to the merits of the motion for summary judgment.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

---

[6] The Court acknowledges that in addition to his affidavit, Plaintiff also attached his informal and formal grievances (doc. no. 73, Exs. B, C, D, E, G, H, I, K, L, M); a memorandum from Defendant Ashley stating that Plaintiff could enter the faith-based program, but the program is Christian based and Plaintiff would have to adhere to the program's guidelines (id. at Ex. F); a copy of a transcript of Defendant Day's radio interview discussing Wheeler's faith-based program (id. at Ex. J); one page of the contract between CCA and the GDOC (id. at Ex. N); the job description and policy of the chaplain at Wheeler (id. at Exs. O, P); emails between a Woodrow Hudson and a Robin Holton discussing kosher meals at Wheeler (id. at Ex. Q); a transfer request, dated June 21, 2006, indicating that Plaintiff was under investigation for an alleged sexual assault (id. at Ex. S); SOP VA01-0008 governing Islamic (Muslim) Guidelines (id. at Ex. T); Plaintiff's settlement offer (id. at Ex. U) and Defendants' response to Plaintiff's offer (id. at Ex. V); and three documents from the offender management system indicating that Plaintiff was a library aide/orderly, dorm orderly, and in the basic life principles program (id. at Exs. W, X, Y).

12

Applicable substantive law identifies which facts are material in a given case.[7] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Id. at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party meets its burden, the non-moving party must then "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by

---

[7] The Court is mindful that for purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

## III.   ANALYSIS

### A.   Monetary Damages and Emotional/Physical Injury

Plaintiff contends that he is entitled to monetary damages for both mental and emotional damages caused by Defendants' actions.[8] To support his claim for these damages, Plaintiff states that he has "stress-induced heart problems, including, but not limited to, continuous atrial fibrillations and angina 'attacks'" that did not arise until he "encountered . . . anti-Semitism and denial of religious rights" at Wheeler. (Doc. no. 48, pp. 8-9). Under 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The Eleventh Circuit has unequivocally held that this provision applies to constitutional claims. Harris v. Garner, 216 F.3d 970, 984-

---

[8] Plaintiff also seeks injunctive relief. However, because Plaintiff is no longer incarcerated at Wheeler, where Defendants are employed, he is not entitled to injunctive relief against Defendants. See Booth v. Churner, 532 U.S. 731, 735 (2001) (noting that a plaintiff's transfer to another prison mooted his claims for injunctive relief); Trailer Rental Co., Inc. v. Buchmeier, 800 F. Supp. 759, 762 (E.D. Wis. 1992) (injunctive relief is not available when defendants do not have control over a plaintiff and cannot provide the requested relief).

85 (11th Cir. 2000). Thus, to show the existence of a genuine issue of material fact regarding a claim for mental or emotional injury, an incarcerated plaintiff must provide evidence sufficient for a reasonable jury to find that he has suffered a physical injury. Cf. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (defeating motion for summary judgment requires showing that reasonable jury could return verdict for non-moving party).

Here, Plaintiff has failed to demonstrate that his heart condition, atrial fibrillation, is a result of the stress of Defendants' alleged religious discrimination. The evidence in the record indicates that Plaintiff's heart condition was instead a result of other causes. Specifically, Dr. Sightler stated in his affidavit that atrial fibrillation has various causes including, but not limited to, high blood pressure and heart attacks, and is not a condition that is caused by stress. (Doc. no. 67, Ex. B, ¶ 4). Plaintiff admits that (1) before he was transferred to Wheeler, he was placed on blood pressure medication because his blood pressure was slightly elevated (doc. no. 73, Ex. A, ¶¶ 2-3), and (2) after he had been working at his prison job for three months, he started having heart attacks, "one or two a week" that were "minor" (doc. no. 67, Ex. A, pp. 33-34).

Additionally, Plaintiff has not submitted any evidence to contradict Dr. Sightler's statements. In his response to Defendants' summary judgment motion, Plaintiff, relying on various medical textbooks, argues that all conditions can be caused by stress and thus, his condition was caused by stress. However, Plaintiff's arguments in his response are not evidence, and even if they were, information from general medical textbooks is not sufficient to overcome an opinion from Plaintiff's treating medical physician regarding Plaintiff's condition. The only evidence regarding his heart condition that Plaintiff provides is his

15

statements in his affidavit and verified complaint that his heart problems were caused by Defendants' discriminatory actions. In his amended complaint, Plaintiff states that his heart problems did not start until he "encountered the anti-Semitism and denial of religious rights" at Wheeler that is "verifiable through medical records." (Doc. no. 48, ¶ 5.9). However, Plaintiff has not provided any of these medical records to contradict Dr. Sightler's medical conclusions. Further, in his affidavit, Plaintiff states that his outside cardiologist told him that "stress is a major factor in any and all health issues."[9] (Doc. no. 73, Ex. A, ¶ 2). However, this statement is insufficient to establish that stress of the alleged religious discrimination caused Plaintiff's heart condition.

Therefore, not only has Plaintiff admitted that he was experiencing conditions, other than stress, that can cause atrial fibrillation, but Plaintiff has provided no medical evidence to contradict Dr. Sightler's medical opinions regarding Plaintiff's heart condition. Thus, Plaintiff has failed to demonstrate that his physical injuries are related to his religious discrimination claims such that he could recover for emotional injury under § 1997e(e).

However, the Court recognizes that Plaintiff could seek nominal damages even though he has not demonstrated a physical injury. Specifically, "[n]ominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right . . . even if he cannot prove actual injury sufficient to entitle him to compensatory damages." Hughes v. Lott, 350 F.3d 1157, 1162 (11th Cir. 2003) (citation omitted). Stated another way, nominal damages are an appropriate means of vindicating fundamental constitutional rights

---

[9] The Court notes that this is Plaintiff's own statement and that Plaintiff did not provide any opinions by his cardiologist stating that Plaintiff's heart condition was caused primarily by the stress he has allegedly suffered.

such as those secured by the Fourth Amendment, and it is "in keeping with the principle that *pro se* complaints [should] be construed liberally" to read a prisoner's complaint as containing a request for nominal damages even if the prisoner does not request such damages expressly. Wilson v. Moore, 270 F. Supp. 2d 1328, 1332 (N.D. Fla. 2003) (citations omitted). In his amended complaint, Plaintiff seeks an "unspecified [amount] in monetary damages" and "any other such relief as deemed just and proper," which the Court liberally construes as a request for nominal damages. Therefore, the Court will consider Plaintiff's arguments to determine if he has raised a valid claim for a violation of a fundamental constitutional right, or whether Defendants are instead entitled to summary judgment.

## B.    Previously Dismissed Claim and Defendant Ashley

As noted above, Judge Bowen previously dismissed Plaintiff's claim for an alleged deprivation of his right to free practice of religion as it relates to (1) receiving a kosher diet and (2) the Jewish faith-based program at Wheeler. Although this Court did not rescreen Plaintiff's amended complaint pursuant to 28 U.S.C. §§ 1915(e) and 1915A, in his affidavit, Plaintiff concedes that Judge Bowen's decision dismissing his claim regarding his right to free practice of religion relating to the kosher diet and the faith-based program as being unexhausted applies to his amended complaint. (Doc. no. 72, Ex. A, p. 6). Therefore, the Court will not address this claim, as it has already been considered and dismissed.[10]

Plaintiff has also failed to state a claim for relief against Defendant Ashley. In his amended complaint, Plaintiff never mentioned Defendant Ashley's name, or otherwise

---

[10] Even if Plaintiff had not conceded that the above claims have been dismissed, Judge Bowen has already concluded that these claims have not been exhausted, and thus, this Court would not otherwise consider them. (See doc. no. 21, pp. 3-7, 15).

attributed any constitutional violations to Defendant Ashley. As such, Plaintiff did not set forth any allegations in his amended complaint indicating that Defendant Ashley violated Plaintiff's rights. See Crawford-El v. Britton, 523 U.S. 574, 598 (1998) (noting that plaintiffs must "put forward specific, nonconclusory factual allegations that establish improper motive causing cognizable injury"). Plaintiff, did, however, assert in his affidavit attached to his response to Defendants' summary judgment motion that Defendant Ashley denied "his request to enter the faith-based program as a Torah-Observant Jew, stating that the program is based on teachings of the Christian religion." (Doc. no. 72, Ex. A, p. 6). Although Plaintiff did not state this claim in his amended complaint, as he was required to do, even giving Plaintiff the benefit of the doubt and considering his claim against Defendant Ashley, Plaintiff's claim fails because it relates to Plaintiff's request to enter the prison's faith-based program, a claim that Judge Bowen already dismissed as unexhausted. Therefore, Plaintiff has not stated a valid claim against Defendant Ashley, and Defendant Ashley's request for summary judgment should be **GRANTED**.

**C.     Defendant John D. Ferguson**

Similar to Defendant Ashley, Plaintiff has failed to state a claim for relief against Defendant Ferguson, as Plaintiff never mentioned Defendant Ferguson's name anywhere in his amended complaint or in his response to Defendant's summary judgment motion, or otherwise attributed any constitutional violations to Defendant Ferguson. As such, Plaintiff did not set forth any allegations indicating that Defendant Ferguson violated his rights. See Crawford-El, 523 U.S. at 598 (noting that plaintiffs must "put forward specific, nonconclusory factual allegations that establish improper motive causing cognizable injury").

18

Moreover, it appears that Plaintiff sued Defendant Ferguson in his capacity as a supervisor, which is improper. In the Eleventh Circuit, "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). To hold an official in a supervisory position liable, Plaintiff must demonstrate that either (1) the supervisor personally participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervising official and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). Here, Plaintiff has not alleged that Defendant Ferguson personally participated in the alleged constitutional violation, but instead stated, in his amended complaint, that he was suing Defendant Ferguson because, as CEO of CCA, Defendant Ferguson "is charged with authority and responsibilities for the custody and day-to-day treatment of prisoners housed in CCA facilities." (Doc. no. 48, ¶ 4.2). Based on this statement, it appears that Plaintiff is suing Defendant Ferguson based on his supervisory capacity and not based on any personal involvement in the alleged unconstitutional acts.

Similarly, Plaintiff fails to allege a "causal connection" between Defendant Ferguson and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (per curiam) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a

19

history of widespread abuse[11] puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). Plaintiff has alleged neither with respect to Defendant Ferguson.[12] Accordingly, Defendant Ferguson's request for summary judgment should be **GRANTED**.

**D.    Plaintiff's First Amendment Claims**

Plaintiff claims that Defendants Day and Kemp violated his First Amendment right to free religious practice when they denied him (1) a Passover Package, (2) Jewish books and literature, and (3) a "pack-out" at the end of a religious fast. "[A]llegations of state interference with religious practices not facially idiosyncratic state a claim under the First Amendment that can only be defeated if the state demonstrates a 'substantial and compelling interest' justifying the regulation." Saleem v. Evans, 866 F.2d 1313, 1316 (11th Cir. 1989)

---

[11] The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added). Plaintiff has not made allegations of "widespread abuse."

[12] Despite Defendants' arguments to the contrary, Defendants Day and Kemp are not entitled to summary judgment on the basis that Plaintiff sued them under the theory of respondeat superior. Although Defendants are correct that Plaintiff stated in his deposition that he is suing Defendant Kemp because "he is the warden" and "[he] has the ultimate responsibility for this prison," (doc. no. 68, p. 21), and that he is suing Defendant Day because "he is the . . . chaplain of this place" (id. at 22), Plaintiff's arguments in his amended complaint, which Plaintiff filed after Defendants conducted his deposition, indicate that Plaintiff is also suing Defendants Day and Kemp because their specific actions in denying his requests and grievances violated his constitutional rights. Therefore, the Court will consider the remainder of Plaintiff's claims as against Defendants Day and Kemp.

(citation omitted). Such a substantial and compelling interest may involve security or financial concerns within a prison. Walker v. Blackwell, 411 F.2d 23, 26 (5th Cir. 1969);[13] Cochran v. Sielaff, 405 F. Supp. 1126, 1128 (S.D. Ill. 1976). Further, in order to succeed on a claim of deprivation of the right to free religious practice, a plaintiff "must first demonstrate to the trial court the deprivation of a right either by (1) deliberate discrimination, or by (2) even handed application of an inherently discriminatory rule." Walker, 411 F.2d at 25. Here, Plaintiff has demonstrated neither requirement.

Plaintiff first argues that Defendants Day and Kemp violated his right to free practice of religion when they denied his request to receive a Passover Package of kosher food for the eight-day Jewish Passover celebration. In their affidavits, these two Defendants admitted that they were not as familiar with Judaism as with other religions, so when Plaintiff brought the Passover Package issue to their attention, neither Defendant was familiar with this type of package. (Doc. no. 67, Ex. C, ¶ 8; Ex. F, ¶ 3). However, after looking into the matter, Defendant Kemp told the prison staff to allow Plaintiff to receive his Passover Package. Given the prison's policy that inmates can only receive packages that are less than ten pounds, that contain items on the Prison Receipt Items List, and that are sent from approved individuals, Defendant Kemp's actions of looking into the nature of a Passover Package before allowing Plaintiff to receive such a package was reasonable and in the interest of prison security. Moreover, in his deposition, Plaintiff twice admitted that he got the Passover Package that he requested. (Id. at Ex. A, pp. 22, 32; doc. no. 73, p. 3). Therefore, Plaintiff

---

[13] In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions that were handed down prior to the close of business on September 30, 1981.

has not established that Defendants violated his right to free exercise of religion by denying him his Passover Package.

Similarly, Plaintiff has also failed to demonstrate that Defendants violated his right to free exercise of religion by denying him free Jewish books and literature from various Jewish support agencies. Plaintiff states that he has had to make donations to a Jewish organization in order to get his religious materials, and he should not have to make such donations. (Doc. no. 67, Ex. A, pp. 31-32). Although the Eleventh Circuit has noted that the out-right ban of religious texts violates a prisoner's First Amendment right to free exercise of religion, Lawson v. Singletary, 85 F.3d 502, 505 (11th Cir. 1996), Plaintiff does not argue that he has been denied religious materials. In fact, Plaintiff admitted in his deposition that he has received religious materials, and at no time has he alleged that Defendants withheld his religious materials, or did not otherwise allow Plaintiff to receive such materials.

Instead, Plaintiff makes it clear that he contends that his having to pay for these religious materials violates his constitutional rights. (Doc. no. 67, Ex. A, p. 31). However, Plaintiff's constitutional right to receive religious materials does not mean that Defendants must pay for such materials, only that Defendants cannot place an out-right ban on such materials. See Lawson, 85 F.3d at 505. Moreover, because Plaintiff was the only inmate, out of a total of 1,500 inmates at Wheeler, who actively practiced the Jewish religion (doc. no. 67, Ex. C, ¶ 3; doc. no. 73, Ex. C), to obtain a number of materials related to the Jewish religion would pose an unreasonable financial burden on the institution. See Walker, 411 F.2d at 26 (noting that a substantial and compelling interest to defeat a First Amendment claim may involve financial concerns within a prison). Thus, Plaintiff has not met his burden

22

of establishing a First Amendment violation as to the receipt of free religious materials.[14]

Additionally, Plaintiff argues that Defendants violated his right to free practice of religion when they denied him his "pack-outs" at the end of his religious fasts. Specifically, Plaintiff contends that he should be entitled to receive a "pack-out" at the end of a 24-hour religious fast, he never received any "pack-outs," and he was not notified until the month he was transferred out of Wheeler that he could get a "pack-out."[15] (Doc. no. 48, p. 7; doc. no. 72, p. 13). When Plaintiff first brought his request for a "pack-out" to Defendant Kemp, Defendant Kemp admits that he was not aware of this practice, so he asked Defendant Day to look into the nature of a "pack-out," and whether such "pack-out" could be a security or financial concern for Wheeler. (Doc. no. 67, Ex. C, ¶ 6). However, after Defendants looked into the matter, it was determined that Plaintiff was permitted to get a "pack-out" at the end of a religious mandated fast. (Id.; Ex. A, pp. 20, 26). Therefore, once Defendants researched what a "pack-out" was, and whether the prison could offer this option to Plaintiff, Defendants permitted Plaintiff to receive his pack-outs and did not continually deny Plaintiff's request for a "pack-out."[16]

---

[14] The Court notes that although SOP IIB06-0001 does not allow inmates to receive religious materials from unapproved vendors, because Plaintiff was the only inmate actively practicing the Jewish faith, Defendant Kemp allowed Plaintiff to receive his religious materials even though the materials were not sent from an approved vendor and were thus not in accordance with the SOP. (Doc. no. 67, Ex. C, ¶ 7).

[15] Plaintiff submitted a memorandum, dated June 1, 2006, directed to Plaintiff, informing him that he could receive a "pack-out" but that he had to notify Defendant Day of his request at least 30 days prior to the religious holiday. (Doc. no. 73, Ex. R).

[16] Further, although Plaintiff now contends that he did not know until June 2006 - the month he transferred out of Wheeler - that he was entitled to a "pack-out," he admitted in his

Moreover, there is no evidence in the record that Defendants deliberately withheld any "pack-outs" that Plaintiff properly requested. As noted above, the statewide SOP concerning holidays/fasts/feasts, SOP IVL01-0027, requires an inmate to submit all special requests in writing 45 days before any religious occasion. (Doc. no. 67, Ex. C, ¶ 6). The only evidence in the record demonstrating that Plaintiff actually submitted a request for a "pack-out" is Plaintiff's statement in his deposition that he had put in a request for a "pack-out" before the first religious fast of the year. (Id. at Ex. A, p. 20). However, Plaintiff also admitted that he only requested this "pack-out" two-and-a-half weeks before the date of this fast (id.), which was well after the date that Plaintiff should have submitted his request. Therefore, because Plaintiff has not demonstrated that he properly requested a "pack-out" in accordance with the prison's policies, he has not established that he is entitled to relief on this claim. Accordingly, Defendants' request for summary judgment on Plaintiff's free practice of religion claim should be **GRANTED**.

## E. Working Prohibited by Religion

Plaintiff further contends, in his deposition and again in his response to Defendants' summary judgment motion, that Defendants violated his First Amendment rights by requiring him to work on days that the Jewish religion prohibits working. (Doc. no. 67, Ex. A, p. 33). First, Plaintiff failed to raise this claim in his amended complaint. Rather, he raised it for the first time in his deposition and his response to Defendants' summary judgment motion, which is improper. See Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir.

_____

May 2006 deposition that Mr. Brown informed him "last year" (i.e., 2005) that he could receive a "pack-out" at the end of his religious mandated fasts. (Doc. no. 67, Ex. A, p. 20).

24

2004) ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a). A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment.").

Nonetheless, even if the Court were to consider Plaintiff's claim, Plaintiff would not be entitled to relief. In both his deposition and his response to Defendants' summary judgment motion, Plaintiff admits that, because of his heart problems, he is no longer working. (Doc. no. 67, Ex. A, p. 33; doc. no. 72, p. 4). Moreover, Defendant Kemp averred in his affidavit that he was unaware of any SOP relieving inmates from the requirement of performing their prison jobs during religious holidays, but because Plaintiff was not working due to his medical condition, this was not an issue.[17] (Doc. no. 67, Ex. C, ¶ 8). Defendant Kemp further stated that Plaintiff never requested a work wavier from him, and he was not aware of any occasions where Plaintiff was forced to work on a religious holiday that forbids working. (Id.).

Further, Plaintiff has failed to provide any specific occasions where he was forced to work on a religious holiday. In fact, Plaintiff admits that there were no occasions where he was required to work on a day that he was prohibited from working. (Doc. no. 67, Ex. A, p. 33). At best, in his response to Defendants' summary judgment motion, Plaintiff described his prison jobs at the inmate store, the school, and in the dorms (doc. no. 72, pp. 3-4), but he failed to provide any specific instances when he was forced to work at these jobs during a religious holiday that forbids working. Accordingly, Plaintiff has not demonstrated

---

[17] As noted above, in his affidavit Dr. Sightler averred that after Plaintiff's heart condition was diagnosed, he directed that Plaintiff's status be changed to "medically unassigned." (Doc. no. 67, Ex. B, p. 3).

that Defendants violated his First Amendment rights by forcing him to work on a religious holiday that forbids working, and Defendants' request for summary judgment on this claim should be **GRANTED**.

**F.      Plaintiff's Claim As Asserted Under RLUIPA**

Defendants are also entitled to summary judgment on Plaintiff's claim under RLUIPA. According to RLUIPA, government entities cannot impose a substantial burden on an incarcerated person's right to exercise his religion, unless the government demonstrates that the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). However, RLUIPA only applies in cases in which "(1) the substantial burden is imposed in a program or activity that receives Federal financial assistance; or (2) the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes." Id. § 2000cc-1(b).

Here, there is no evidence in the record that Wheeler received "Federal financial assistance" for the programs and activities in question. In fact, Defendant Kemp testified in his affidavit that Wheeler does not receive federal funding. (Doc. no. 67, Ex. C, ¶ 5). Because Plaintiff has not provided any evidence to refute this fact, Defendants' request for summary judgment on this claim should be **GRANTED**.

**G.      Plaintiff's Equal Protection Clause Claim**

Next, Plaintiff claims that Defendants violated his rights under the Equal Protection Clause. To state a valid Equal Protection claim, a prisoner must show: (1) that he has been treated differently from other "similarly situated" inmates, and (2) that this discriminatory

treatment is based upon a constitutionally impermissible basis, such as religion. Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001) (*per curiam*). Additionally, a prisoner must demonstrate that the defendants were motivated by a discriminatory intent or purpose. See Parks v. City of Warner Robins, 43 F.3d 609, 616 (11th Cir. 1995) (requiring "proof of discriminatory intent or purpose" to show an Equal Protection Clause violation); Elston v. Talladega County Bd. of Educ., 997 F.2d 1394, 1406 (11th Cir.1993) (requiring a plaintiff to demonstrate that the challenged action was motivated by an intent to discriminate in order to establish an equal protection violation). Potential indicators of discriminatory intent include "a clear pattern of disparate impact, unexplainable on grounds other than [religion]; the historical background of the challenged decision or the specific events leading up to the decision; procedural or substantive departures from the norm; and the legislative or administrative history of the challenged statute." Parks, 43 F.3d at 617 (citation omitted). However, the Supreme Court has determined that disparate impact alone cannot support an Equal Protection claim. Washington v. Davis, 426 US 229, 242 (1976).

In the instant case, Plaintiff has met his burden of demonstrating that he has been treated differently from other "similarly situated" inmates on the basis of his religion because requests from inmates of other religions (such as the Christian and Muslim religions) are accommodated, but requests from inmates of the Jewish religion are not. However, Plaintiff has failed to establish that Defendants Day and Kemp had an intent to discriminate. In fact, the evidence in the record demonstrates that Plaintiff's requests were accommodated to the extent that they were reasonable and could be met. Specifically, Defendant Kemp determined that Plaintiff was allowed to have a "pack-out" after a religious fast as long as

27

Plaintiff provided the appropriate request by the 45-day deadline set forth by the statewide SOP. (Doc. no. 67, Ex. C, ¶ 6). Moreover, Defendant Kemp stated that he allowed Plaintiff to receive the religious literature that he wanted even though the GDOC's policy did not technically allow Plaintiff to receive these materials since they were from an unapproved vendor. (Id. ¶ 7). Further, according to both Defendant Kemp and Plaintiff, Plaintiff received the Passover Package he requested. (Id. ¶ 8; doc. no. 73, Ex. A, p. 3).

Additionally, Plaintiff contends that his right to equal protection was violated when (1) he was not told of the date of his rabbinical visit, such that he could shower and shave prior to seeing his Rabbi, and (2) he was handcuffed and placed into a "hidden alcove," both of which are allegedly not issues for the Christian and Muslim inmates.[18] (Doc. no. 73, Ex. A, pp. 3-4). Plaintiff's arguments appear to stem from the fact that while he was incarcerated at other GDOC facilities, he was given prior notice of rabbinical visits and was never "sequestered into a 'hidden alcove' or handcuffed." (Id. at 4). However, the evidence in the record demonstrates that at no time was Plaintiff ever denied a visit from his Rabbi, a fact that Plaintiff admits. (Doc. no. 67, Ex. C, ¶ 8; doc. no. 72, pp. 4-5). Moreover, the record also demonstrates that for security purposes, inmates are never told in advance the date and time that any outside visitors are coming to the facility. (Doc. no. 67, Ex. C, ¶ 8). Because Plaintiff is meeting with an outside visitor when seeing his Rabbi, the Court

---

[18] The Court notes that Plaintiff did not raise this claim in his amended complaint, but raised it for the first time in his deposition and his response to Defendants' summary judgment motion, which is improper. See Gilmour, 382 F.3d at 1315. However, because the Court determined that Plaintiff "has stated cognizable grounds for relief under the Equal Protection Clause of the Fourteenth Amendment" (doc. no. 21, p. 11), without specifying exactly what actions violated the Equal Protection Clause, the Court will address this claim.

recognizes that, for security and safety purposes, he may be handcuffed during these visits. Further, although Plaintiff complains about having to meet with his Rabbi in a "hidden alcove," Plaintiff admits that the meeting with his Rabbi occurred in the same room that defense counsel took Plaintiff's deposition (doc. no. 67, Ex. A, p. 36), thus indicating that this room is a type of all-purpose room that is used when inmates have meetings with outside visitors. Therefore, Plaintiff's argument that he was stuck in a "hidden alcove" due to his religious status is meritless. See Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972) (noting that every religious group within a prison -- however few in number -- need not have identical facilities. A special "place of worship need not be provided for every faith regardless of size."). Accordingly, Plaintiff has failed to support his Equal Protection claim against Defendants, and Defendants' request for summary judgment on this claim should be **GRANTED**.

**H.      Retaliation**

It appears that Plaintiff also argues in his amended complaint that Defendants retaliated against him by raising his security classification level and transferring him to another institution. As relief, Plaintiff seeks a transfer back to Wheeler. However, Plaintiff already brought this claim in a motion for a preliminary injunction, (doc. no. 42), which Judge Bowen denied, concluding that Defendants do not have the authority to raise Plaintiff's security level or to transfer Plaintiff to another institution (doc. no. 55, pp. 4-5). Moreover, as noted above, because Plaintiff is no longer in Defendants' custody, he cannot obtain from Defendants the injunctive relief he seeks in this claim. Therefore, Defendants' request for summary judgment on this claim should be **GRANTED**.

29

## I.    State Created Protected Interests

Finally, Plaintiff states, in his amended complaint, that Defendants violated his right to free exercise of religion under the "State Created Protected Interests within the Department of Corrections Code for Religious Practices." (Doc. no. 48, pp. 13-14). Specifically, he argues that Defendants' responsibility in "creating, maintaining, approving, and/or implementing policies, rules, and regulations [] interfered with and completely denied [him] those State Created Protected Interests." (Id. at 13).

This Court derives its authority to decide Plaintiff's § 1983 federal claims from 28 U.S.C. § 1331, which provides that district courts have original jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal courts are given the additional power to exercise supplemental jurisdiction over state law claims which "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, § 1367(c)(3) states that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction. . . ." Id. § 1367(c)(3) (emphasis added).

The Eleventh Circuit has explicitly advised that a district court is well within its discretion to dismiss state law claims once the basis for original federal court jurisdiction no longer exists:

> At this time, the case retains no independent basis for federal jurisdiction . . . . A proper resolution of the two state law causes of action will require a careful analysis of Alabama law--something the courts of Alabama are in the best position to undertake and, for reasons of federalism,

should undertake . . . . We conclude that the district court should dismiss the state law claims so that Appellee may pursue them in state court.

Nolin v. Isbell, 207 F.3d 1253, 1258 (11th Cir. 2000); see also Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 951 n.26 (11th Cir. 1997) ("After dismissing Panama's federal claims against the . . . defendants, the district court correctly dismissed its remaining state law claims against these defendants."); Rice v. Branigar Org., Inc., 922 F.2d 788, 792 (11th Cir. 1991) (recognizing that trial court's decision to exercise pendant jurisdiction over state law claims is discretionary).

Here, the Court has recommended that Defendants be granted summary judgment on all of Plaintiff's claims noted above that formed the basis for the exercise of federal jurisdiction.[19] As the Court has advised that the claims serving as the basis for original federal court jurisdiction either be dismissed or denied on the merits, the Court recommends that Plaintiff's state law claim be **DISMISSED** without prejudice so that Plaintiff may, if he desires, attempt to pursue this claim in the Georgia courts.

The Court acknowledges that in his deposition, Plaintiff stated that what he wanted was Defendants to create a policy that recognizes the needs of the Jewish religion. (Doc. no. 67, Ex. A, p. 30). Specifically, Plaintiff wanted such policy to include pack-outs at the end of religious mandated fasts, free Jewish literature and books from Jewish support agencies,

---

[19] The Court notes that to the extent that Plaintiff contends that this Court's original jurisdiction was invoked by Defendants' alleged violation of the statewide SOPs set forth by the GDOC, any such violation concerns state law/policies and does not amount to a constitutional violation for which Plaintiff can obtain relief under § 1983, as § 1983 is not concerned with a violation of state law/policies. Knight v. Jacobson, 300 F.3d 1272, 1276 (11th Cir. 2002) ("While the violation of state law may (or may not) give rise to a state tort claim, it is not enough by itself to support a claim under § 1983.").

authority to receive Passover Packages from Jewish support organizations for the Passover holiday, the right to receive notice of a rabbinical visit, and the right for inmates of any religion to participate in the faith-based dorms without having to study the Christian religion. (Id. at 30-32, 35, 37). Thus, to the extent that Plaintiff's claim is actually that Defendants are liable for not creating a SOP regarding certain aspects of the Jewish religion, Plaintiff's claim does not form the basis for § 1983 relief. According to Defendant Kemp, Defendants are not responsible for creating the governing policies at Wheeler, as that responsibility rests with the GDOC. (Doc. no. 67, Ex. C, ¶ 2). Moreover, Defendant Kemp averred that the policies under which the prison was managed during Plaintiff's incarceration were required under the contract between Wheeler and the GDOC, and this contract required Wheeler to follow the same statewide SOP's as the state prisons. (Id.). Therefore, Defendants have no control over whether a SOP is created governing the Jewish religion. Accordingly, Defendants' request for summary judgment on this claim should be **GRANTED**.

## IV.   CONCLUSION

For the reasons stated above, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED**, that judgment be **ENTERED** in favor of Defendants, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 27th day of March, 2007, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE